IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

BRANDON ATWOOD,

    Plaintiff,

v.

AEARO TECHNOLOGIES LLC and 3M COMPANY,

    Defendants.

Case No. 19-cv-03036

**COMPLAINT**

1. To protect this country's armed forces, the United States Military supplies servicemembers with, among other things, earplugs. The government obtains those earplugs from private companies and its standards for military-use earplugs are, understandably, demanding. Servicemembers must be able to perform their duties, in training and in combat, and so must be able to hear spoken commands and other important noises while also being protected from the damaging impulse sounds of explosions and gunfire.

2. In the early 2000s Aearo Technologies LLC developed its dual-ended Combat Arms Earplugs v.2 for sale to the military.



1

Each end of these earplugs, one yellow and one olive, could be inserted into the ear canal. The olive end was closed and meant to block all sound like a traditional earplug. The yellow end was open, to a small extent, to allow the wearer to hear things like spoken commands, while still offering protection from damaging impulse sounds.

3. But the dual-ended Combat Arms Earplugs were poorly designed. They could not be securely fit into the ear canal because, when one end was placed into the ear, the largest ring, or flange, of the opposite end would get in the way. As a result, the earplugs failed to prevent damage to servicemembers' hearing.

4. Aearo was aware of this flaw. After the earplugs initially failed performance testing, Aearo invented a work-around. The work-around involved folding back the offending flange to get it out of the way so the earplug could be inserted far enough into the ear. Only with the work-around could the earplugs perform well enough in testing to meet the military's exacting standards. Aearo used testing data obtained using the work-around to justify its statements to the military about the earplugs' performance and the similar statements on the products' packaging.

5. Aearo sold thousands, perhaps millions, of these earplugs to the military. Each pair came with written instructions. Those instructions did not reveal the fold-back work-around. A servicemember who used the earplugs as instructed therefore thought that his or her hearing was being protected when, in fact, it was not.

6. Aearo started selling these earplugs to the government in 2003 and continued to sell the earplugs for military use for over a decade. In 2008, 3M Company acquired Aearo and continued selling the defective earplugs until discontinuing the model in 2015. Hundreds of thousands, perhaps millions, of servicemembers have had their hearing damaged because of Aearo's and 3M's conduct.

7. Brandon Atwood is one of those servicemembers. Atwood used the dual-ended Combat Arms Earplugs during Atwood's years of service to this country. As a result, Atwood now suffers from diagnosed hearing impairment. Atwood now sues to recover damages for those injuries.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties are diverse.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

10. Plaintiff Brandon Atwood is a resident of Lake Stevens, WA.

11. Defendant 3M Company is a corporation organized under Delaware law with its principal place of business in St. Paul, Minnesota.

12. Defendant Aearo Technologies LLC is a Delaware limited liability company with its principal place of business in Indianapolis, Indiana. On April 1, 2008, a subsidiary of 3M bought the stock of Aearo Holding Corporation, the parent of Aearo Technologies.

## FACTS

### Aearo Falsifies Testing Data

13. Aearo has been in the business of energy-control technology for decades.

14. Aearo began testing the dual-ended Combat Arms Earplugs v.2 around January 2000. Aearo conducted the testing in its own laboratory, not an independent laboratory.

3

15. The purpose of the testing was to ascertain the NRR score of the earplugs. NRR stands for "Noise Reduction Rating," which is a unit of measurement of the effectiveness of hearing protection devices. The higher the NRR, the greater the potential for noise reduction.

16. Aearo selected ten individuals to serve as test subjects, some of whom were its employees. Aearo personnel monitored the testing.

17. Aearo's original plan was to test the NRR of both the yellow, or open end, and the olive, or closed end, of the earplugs and to do so with ten test subjects.

18. After testing just 8 subjects with the olive end, Aearo stopped the test. The first 8 tests of the olive end suggested an NRR of 10.9, which was inadequate and below Aearo's expectations and government standards.

19. Aearo did test the yellow end and arrived at a -2 NRR, indicating that the earplug amplified sound, rather than blocking it out. Aearo's later packaging misrepresented this value as 0.

20. In connection with the January 2000 test, Aearo discovered the design flaw—that the largest ring or flange of the outward facing end of the plug prevented the inward facing end from fitting securely in the ear. It was at this point that Aearo developed the work-around, folding that flange back.

21. Having discovered this work-around, Aearo retested the olive end of the earplugs a month later. Using the work-around, Aearo achieved the desired NRR scores.

**Aearo Receives a Military Contract for the Earplugs**

22. In 2003, the government began buying Aearo's dual-ended Combat Arms Earplugs for military use. From that time until 2012, Aearo (and, later 3M) were the exclusive supplier of this type of earplug to the military.

23. The government's purchases were subject to Indefinite-Quantity Contracts awarded to Aearo and 3M via a request-for-proposal process.

24. As part of that process, Aearo and 3M had to continually certify that the earplugs complied with certain contract requirements, specifically the Salient Characteristics of Medical Procurement Item Description of Solicitation No. SP0200-06-R-4202.

25. Aearo and 3M knew that the earplugs did not meet those requirements and therefore knew that their certifications were false.

26. One of those requirements, number 2.4, was that "The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability."

27. Another requirement, number 2.5, was that "Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit."

28. Aearo and 3M did not satisfy these requirements because the earplugs were defectively designed and the instructions the companies supplied did not explain the defect or the need to, and how to, fold back the opposing flange.

**3M Settles a False Claims Act Case About the Earplugs for Millions of Dollars**

29. 3M continued selling the earplugs for military use until they were discontinued in 2015, exposing thousands of servicemembers to the risk of hearing loss and tinnitus.

30. Roughly three years later, 3M agreed to pay $9.1 million to the United States to resolve allegations that it knowingly sold the dual-ended Combat Arms Earplugs without disclosing defects that hampered their effectiveness.

31. Until this settlement revealed 3M and Aearo's misconduct, injured servicemembers had no reason to suspect that their hearing loss or tinnitus could have been caused by 3M and

Aearo's misconduct. Servicemembers simply used the earplugs as instructed, and assumed they were working.

### Brandon Atwood Uses the Earplugs and is Later Diagnosed with Hearing Impairment

32. Atwood joined the Army at 17.

33. At that time, Atwood had never suffered from or been diagnosed with tinnitus or hearing loss.

34. Atwood used the dual-ended Combat Arms Earplugs when firing weapons and around other large noises while stationed at Fort Leonard Wood Army Base, which is located in Pulaski, Missouri.

35. Atwood used the dual-ended Combat Arms Earplugs when firing weapons while stationed at Fort Bliss, which is located in Texas.

36. Atwood used the dual-ended Combat Arms Earplugs when firing weapons, around explosions, and in combat while deployed to Iraq.

37. Since using the dual-ended Combat Arms Earplugs, Atwood has been diagnosed with tinnitus in both ears.

38. Atwood receives government benefits in connection with his tinnitus.

### CAUSES OF ACTION

### First Cause of Action
*Design Defect–Negligence*

39. Atwood incorporates all other allegations by reference.

40. The defendants knew that the dual-ended Combat Arms Earplugs would be used by servicemembers.

41. The defendants therefore had a duty to manufacture, design, formulate, test,

6

package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute, the dual-ended Combat Arms Earplugs with reasonable care for the safety of servicemembers, including Atwood.

42. The dual-ended Combat Arms Earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

43. When the earplugs are inserted into the ear according to the defendants' instructions, a proper seal is not formed with the ear canal. This defect has the same effect when either end is inserted because the earplugs are symmetrical.

44. Upon information and belief, the defendants failed to exercise reasonable and due care under the circumstances and therefore breached their duty in the following ways:

   a. Failing to design the dual-ended Combat Arms Earplugs in a manner which would result in an NRR of "22" when used with the olive end inserted, according to the standard fitting instructions;

   b. Failing to properly test the dual-ended Combat Arms Earplugs;

   c. Failing to properly analyze the data resulting from testing of the dual-ended Combat Arms Earplugs;

   d. Designing, manufacturing, distributing, and selling the dual-ended Combat Arms Earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

   e. Designing, manufacturing, distributing, and selling the dual-ended Combat Arms Earplugs without providing proper instructions to avoid the harm which could foreseeably occur when using the earplugs according to standard instructions;

   f. Failing to use the standard of care required of a reasonable and prudent manufacturer of hearing protection products; and

   g. Continuing to sell the earplugs after they knew or should have known of the

7

earplugs' adverse effects and/or the availability of safer designs.

45. As a direct and proximate result of the defendants' actions described here, Atwood suffered serious injuries, including hearing impairment.

## Second Cause of Action
*Design Defect–Strict Liability*

46. Atwood incorporates all other allegations by reference.

47. Atwood was a foreseeable user of the dual-ended Combat Arms Earplugs.

48. The earplugs are defective because their design causes them to loosen in the wearer's ear, imperceptibly to the wearer, permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

49. The defendants knew that the defective condition of the dual-ended Combat Arms Earplugs made them unreasonably dangerous to servicemembers.

50. The dual-ended Combat Arms Earplugs were dangerous when used by an ordinary user who used it as it was intended to be used.

51. The dual-ended Combat Arms Earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user because the design of the earplugs allows for dangerous sounds to bypass the plug altogether.

52. The defendants knew of the defective design at the time the dual-ended Combat Arms Earplugs were provided to Atwood.

53. At the time the dual-ended Combat Arms Earplugs left the defendants' possession, the dual-ended Combat Arms Earplugs were defective and were in a condition that made them unreasonably dangerous to ordinary servicemembers.

54. At all relevant times, Atwood used the dual-ended Combat Arms Earplugs in

the manner in which they were intended.

55. The dual-ended Combat Arms Earplugs were the proximate cause of Atwood's hearing impairment.

56. The defendants' conduct was a substantial factor in bringing about Atwood's injuries.

57. As a direct and proximate result of the defendants' actions described here, Atwood suffered serious injuries, including hearing impairment.

### Third Cause of Action
*Failure to Warn–Negligence*

58. Atwood incorporates all prior allegations by reference.

59. At all times relevant to this action, the defendants had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute, the dual-ended Combat Arms Earplugs with reasonable and due care for the safety and well-being of servicemembers.

60. Atwood was a foreseeable user of the dual-ended Combat Arms Earplugs.

61. The dual-ended Combat Arms Earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

62. The dual-ended Combat Arms Earplugs contained no warnings, or in the alternative, inadequate warnings and/or instructions, as to the risk that the dual-ended Combat Arms Earplugs would allow for dangerous sounds to bypass the plug altogether, posing a serious risk to Atwood's hearing.

63. The warnings and instructions that accompanied the dual-ended Combat Arms

9

Earplugs failed to provide that level of information that an ordinary consumer would expect when using the dual-ended Combat Arms Earplugs in a manner reasonably foreseeable to the defendants.

64. Had Atwood received a proper or adequate warning as to the risks associated with the dual-ended Combat Arms Earplugs, he would not have used the dual-ended Combat Arms Earplugs.

65. The dual-ended Combat Arms Earplugs were the proximate cause of Atwood's hearing impairment.

66. As a direct and proximate result of the defendants' actions described here, Atwood suffered serious injuries, including hearing impairment.

### Fourth Cause of Action
*Breach of Express Warranty*

67. Atwood incorporates all prior allegations by reference.

68. In the defendants' statements, descriptions of the dual-ended Combat Arms Earplugs, and promises relating to the dual-ended Combat Arms Earplugs, the defendants expressly warranted, among other things, that the dual-ended Combat Arms Earplugs were safe and effective for their intended use and were designed and constructed to prevent harmful sounds from bypassing the earplugs to protect the user's hearing.

69. These warranties came in one or more of the following forms: (i) publicly made written and verbal assurances of safety; (ii) press releases and dissemination via the media, or uniform promotional information that was intended to create a demand for the dual-ended Combat Arms Earplugs (but which contained material misrepresentations and utterly failed to warn of the risks of the dual-ended Combat Arms Earplugs); (iii) verbal assurances made by the defendants' sales people about the safety of the dual-ended Combat Arms Earplugs which

10

also downplayed the risks associated with the dual-ended Combat Arms Earplugs; and, (iv) false and misleading written information and packaging.

70. When the defendants made these express warranties, they knew the purposes for which the dual-ended Combat Arms Earplugs were to be used and warranted it to be in all respects safe and proper for such purposes.

71. The defendants drafted the documents and made statements upon which these warranty claims are based and, in doing so, defined the terms of those warranties.

72. The dual-ended Combat Arms Earplugs do not conform to the defendants' promises, descriptions, or affirmations of fact, and was not adequately packaged, labeled, promoted, and/or fit for the ordinary purposes for which such earplugs are used.

73. As a direct and proximate result of the defendants' actions described here, Atwood suffered serious injuries, including hearing impairment.

## Fifth Cause of Action
*Breach of Implied Warranties*

74. Atwood incorporates all prior allegations by reference.

75. At the time the defendants marketed, sold, and distributed the dual-ended Combat Arms Earplugs, they knew of the use for which the dual-ended Combat Arms Earplugs were intended and impliedly warranted the dual-ended Combat Arms Earplugs to be fit for a particular purpose and warranted that the dual-ended Combat Arms Earplugs were of merchantable quality and effective for such use.

76. The defendants knew, or had reason to know, that Atwood would rely on the defendants' judgment and skill in providing the dual-ended Combat Arms Earplugs for their intended use.

77. Atwood reasonably relied upon the skill and judgment of the defendants as to

11

Case 6:19-cv-03036-SRB   Document 1   Filed 01/30/19   Page 11 of 16

whether the dual-ended Combat Arms Earplugs were of merchantable quality, safe, and effective for their intended use.

78. Contrary to such implied warranties, the dual-ended Combat Arms Earplugs were neither of merchantable quality, nor safe or effective for their intended use, because the dual-ended Combat Arms Earplugs were, and are, unreasonably dangerous, defective, unfit and ineffective for the ordinary purposes for which the dual-ended Combat Arms Earplugs were used.

79. As a direct and proximate result of the defendants' actions described here, Atwood suffered serious injuries, including hearing impairment.

## Sixth Cause of Action
*Fraudulent Misrepresentation*

80. Atwood incorporates all prior allegations by reference.

81. The defendants falsely and fraudulently represented to Atwood and the public in general, that the dual-ended Combat Arms Earplugs had been properly tested and were free from all defects.

82. The defendants intentionally manipulated testing of the dual-ended Combat Arms Earplugs, resulting in false and misleading NRRs and improper fitting instructions.

83. The representations made by the defendants were, in fact, false.

84. When the defendants made these representations they knew the representations were false and willfully, wantonly and recklessly disregarded the truth.

85. These representations were made to defraud Atwood and the public and were made with the intent of inducing Atwood and the public, to recommend, purchase, and use the dual-ended Combat Arms Earplugs.

86. Atwood was unaware that the defendants' representations were false.

87. Atwood relied on the defendants' representations in his choice to use dual-ended Combat Arms Earplugs, thereby sustaining injuries.

88. As a direct and proximate result of the defendants' actions described here, Atwood suffered serious injuries, including hearing impairment.

### Seventh Cause of Action
*Fraudulent Concealment*

89. Atwood incorporates all prior allegations by reference.

90. The defendants fraudulently concealed the following material information:

   (a) that testing of the dual-ended Combat Arms Earplugs was flawed;

   (b) the amount of hearing protection provided by the dual-ended Combat Arms Earplugs;

   (c) their awareness of the defects in the dual-ended Combat Arms Earplugs;

   (d) that the dual-ended Combat Arms Earplugs were defective, and would cause hearing impairment;

   (e) that the dual-ended Combat Arms Earplugs were manufactured negligently;

   (f) that the dual-ended Combat Arms Earplugs were manufactured defectively;

   (g) that the dual-ended Combat Arms Earplugs were designed defectively;

   (h) that the dual-ended Combat Arms Earplugs were designed negligently; and,

   (i) that the dual-ended Combat Arms Earplugs were designed improperly.

91. The defendants were under a duty to disclose to Atwood these material facts.

92. Only the defendants had access to these material facts.

93. As a direct and proximate result of the defendants' actions described here, Atwood suffered serious injuries, including hearing impairment.

### Eighth Cause of Action
*Negligent Misrepresentation*

94. Atwood incorporates all prior allegations by reference.

95. The defendants had a duty to represent to Atwood and the public that the dual-ended Combat Arms Earplugs had been properly tested and found to be effective.

96. The defendants were aware that their testing procedures and fitting instructions were false.

97. As a direct and proximate result of the defendants' actions described here, Atwood suffered serious injuries, including hearing impairment.

## Ninth Cause of Action
*Fraud and Deceit*

98. Atwood incorporates all prior allegations by reference.

99. The defendants' testing of the dual-ended Combat Arms Earplugs was manipulated.

100. As a result, the defendants distributed false information which overstated the amount of hearing protection provided by the dual-ended Combat Arms Earplugs.

101. Upon information and belief, the defendants intentionally manipulated test results to falsely overstate the amount of hearing protection provided by the dual-ended Combat Arms Earplugs.

102. Atwood did in fact rely on and believe the defendants' representations to be true at the time they were made and relied upon the representations and was thereby induced to use and rely on the dual-ended Combat Arms Earplugs.

103. At the time the representations were made, Atwood did not know the truth regarding the dual-ended Combat Arms Earplugs.

104. Atwood did not discover the truth nor could he have with reasonable diligence.

105. Had Atwood known the truth he would not have used the earplugs.

106. As a direct and proximate result of the defendants' actions described here, Atwood suffered serious injuries, including hearing impairment.

### Tenth Cause of Action
*Punitive Damages*

107. Atwood incorporates all prior allegations by reference.

108. The defendants have acted willfully, wantonly, or recklessly in one or more of the following ways:

   a. By failing to disclose material facts regarding the dangerous and serious safety concerns of dual-ended Combat Arms Earplugs;

   b. By concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of dual-ended Combat Arms Earplugs;

   c. By failing to disclose the truth and making false representations with the purpose and design of deceiving and lulling Atwood, and others, so that they would use and rely upon the dual-ended Combat Arms Earplugs;

   d. By falsely representing the dangerous and serious health and/or safety concerns of the dual-ended Combat Arms Earplugs to the public at large, and Atwood in particular.

### JURY DEMAND

Atwood demands a trial by jury.

### RELIEF REQUESTED

WHEREFORE, Atwood prays as follows:

   i. For entry of judgment in Atwood's favor;

   ii. For compensatory damages in an amount proven at trial;

   iii. For punitive damages in an amount proven at trial;

   iv. For attorneys' fees and costs;

   v. For pre- and post-judgment interest, if allowable; and

   vi. For all other relief deemed appropriate by the Court.

Dated: January 30, 2019

                Respectfully submitted,

                FUNK RIEMANN LLP

By: /s/ Tim J. Riemann
     Tim J. Riemann, MO Bar #61757
      tim@frlawkc.com
     1600 Genessee Street, Suite 860
     Kansas City, MO 64102
     T: 816.348.3003
     F: 816.895.6351

-and-

KELLER LENKNER LLC

By: Ashley C. Keller
     Ashley C. Keller, IL Bar # 6300171*
      ack@kellerlenkner.com
     Travis D. Lenkner, IL Bar # 6311545*
      tdl@kellerlenkner.com
     150 North Riverside Plaza, Suite 4270
     Chicago, IL 60606
     T: 312.741.5220
     F: 312.971.3502
     *application for admission forthcoming*

**ATTORNEYS FOR PLAINTIFF**